UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| VELVED DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) No. 19-1246-JDT-cgc |
| | ) |
| CORECIVIC, ET AL., | ) |
| | ) |
| Defendants. | ) |

ORDER TO MODIFY THE DOCKET, DISMISSING CASE,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

Velved Davis, a prisoner acting *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 against CoreCivic, First Name Unknown (FNU) Tuggle, and FNU Gable concerning events allegedly occurring at the Hardeman County Correctional Facility in Whiteville, Tennessee. On December 6, 2019, the Court screened and dismissed the complaint. (ECF No. 7.) The Court ruled that Davis failed to state an Eighth Amendment excessive force claim against Correctional Officers Tuggle and Gable. (*Id*. at PageID 29-30.) The Court also found Davis did "not allege[] anything about [Defendant] CoreCivic, much less that one of its policies or customs was the moving force behind the alleged violation of his rights." (*Id*. at PageID 29.) However, the Court granted leave to amend Davis's Eighth Amendment claim for unconstitutional conditions of confinement. (*Id*. at

PageID 31-32.)  He filed a timely amendment on December 16, 2019, (ECF No. 8), which is now before the Court for screening.

The Clerk shall MODIFY the docket to replace Defendant CoreCivic with two Defendants:  CoreCivic, Inc. and CoreCivic of Tennessee, LLC (collectively, "CoreCivic").  (*See* ECF No. 8 at PageID 33.)  The Clerk shall also MODIFY the docket to add the following new Defendants:  (1) the Hardeman County Correctional Facility (HCCF); (2) Hilton Hall, Jr., the Warden of the HCCF; (3) Andrew Jones, Assistant Warden of Operations; (4) Yesenia Bermudez, Chief of Security; and (5) Nichol Owens, Chief of Unit Management.  (*Id*.)

According to Davis, following a disturbance on June 25, 2019, Defendants Tuggle and Gable removed him from his cell for placement in segregation, having "fabricated a lock-up order that falsely stated [he] had been an active participant in [the] disturbance." (ECF No. 8 at PageID 39-40.)  Davis was handcuffed and restrained by Tuggle and Gable and allegedly pushed into cell #5, a cold and flooded cell where he was "forced to wallow in water stemming [sic] from a fire sprinkler spouting water out with force."[1]  (*Id.*)  He "screamed" to Tuggle and Gable that he was "freezing to death" in the water, which was two inches deep,[2] but they ignored him.  (*Id.* at PageID 39-40, 41.)  Davis's personal

---

[1] Davis states the cell was flooded "due to a fire sprinkler that had been compromised by a former inmate."  (*Id.* at PageID 41.)

[2] Because Davis states the sprinkler was "still running" when he was placed in the cell, he appears to be alleging that water also was "on the bed, the toilet, the walls and the door."  (*Id.* at PageID 38.)

possessions and clothes were taken, and he had no shoes and no way to mop up the water. (*Id.* at PageID 38.) He alleges that Defendants Jones, Bermudez, Owens, Tuggle, and Gable "were responsible for subjecting him to wallow in the water . . . and subjecting him to freeze to death." (*Id.* at PageID 39-40.)

Davis states he remained in the flooded cell for eight days, (*id.* at PageID 41); as a result, he became very ill with a cold and/or the flu and "was denied medical attention."[3] (*Id.* at PageID 38.) Defendants Tuggle and Gable allegedly "laughed and tormented him for being housed in a flooded cell." (*Id.* at PageID 41.) Davis "spoke to Defendants Jones, Bermudez, Owens, Tuggle and Gable on numerous occasions" about being ill "but they refused to provide him with any help and told him there were no unoccupied cells available." (*Id.*) Davis alleges his placement in segregation was retaliatory because Defendants Bermudez and Owens had, on numerous occasions prior to the June 25th incident, threatened him "with reprisals for complaining" about conditions at the HCCF. (*Id.* at PageID 39-40.)

The amended complaint alleges claims for: (1) failure to protect Davis's health and safety in violation of the Eighth Amendment; (2) inadequate medical care; (3) inappropriate comments by Defendants Tuggle and Gable; (4) falsifying a lock-up order to justify placing Davis in segregation; (5) violation of equal protection; (6) retaliation, in violation of the First Amendment; and (7) conspiracy to violate Davis's

---

[3] Davis alleges both that he "caught a severe cold," (*id.* at PageID 38), and that he became ill with the flu, (*id.* at PageID 41).

civil rights.  (*Id*. at PageID 39-42, 44.)  The amended complaint also alleges that CoreCivic's policies, practices, and customs amount to deliberate indifference.  (*Id*. at PageID 42-43.)  In addition, Davis asserts claims under Tennessee law, including violation of Article I, §§ 13 and 32 of the Tennessee Constitution; negligence and negligence per se; assault and battery; and intentional infliction of emotional distress.  (*Id*. at 43-44.)  He seeks compensatory and punitive damages.  (*Id*. at PageID 45.)

The legal standards for assessing the claims in an inmate's complaint were set forth in the prior order of dismissal, (ECF No. 7 at PageID 27-28), and need not be repeated in detail herein.

The Eighth Amendment imposes a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care" and to protect prisoners from substantial risks to their safety.  *Farmer v. Brennan*, 511 U.S. 825, 832 & 844 (1994).  An Eighth Amendment claim "requires 'more than ordinary lack of due care for the prisoner's interest or safety.'"  *Id*. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  "A prison official's duty . . . is to ensure 'reasonable safety,'" not absolute safety.  *Id.* at 844 (citing *Helling v. McKinney,* 509 U.S. 25, 33 (1993)).

An Eighth Amendment claim consists of both objective and subjective components.  *Farmer*, 511 U.S. at 834.  To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm."  *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005).

The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a

4

"sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 501 U.S. 294, 302-03 (1991). A prison official may only be held liable under § 1983 for acting with "deliberate indifference" to inmate health or safety. "Deliberate indifference" is a higher standard than negligence; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference." *Id.* at 837. *See also Miller*, 408 F.3d at 812.

Here, the alleged threat to Davis's safety was two inches of cold water on the cell floor and some water on the bed, toilet, and walls. (ECF No. 8 at PageID 38 & 39.) This is insufficient to establish the objective component of an Eighth Amendment violation.

Plumbing problems in jails are neither unexpected nor per se unconstitutional. Rather, the circumstances, nature, and duration of the deprivation must be considered. *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006) (citing *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). None of those factors render Davis's experience in cell #5 unconstitutional. The water was caused by equipment that a fellow inmate compromised, (ECF No. 8 at PageID 41), not a condition affirmatively created by Defendants. Eight days in a cell amidst "two inches of water" (ECF No. 8 at PageID 41) is not sufficiently serious under Eighth Amendment analysis. Though Davis claims he was exposed to "filth," (*id.* at PageID 38), he does not provide any details. He also does not offer facts from which to draw an inference that any flu he may have contracted, (*id.* at PageID 41), was causally related to the water. And a "severe cold," (*id.* at PageID 38), is one of life's discomforts and inconveniences suffered by non-prisoners alike.

What Davis describes in the amended complaint does not amount to unconstitutional deliberate indifference; rather, it is ordinary discomfort from the reality of prison life. The Constitution "does not mandate comfortable prisons." *Wilson*, 501 U.S. at 298; *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). The amended complaint thus does not offer facts demonstrating a substantial risk of serious harm in the first instance, much less one that any Defendant knew of and disregarded. Davis did not endure the type of "continuous exposure" to a purportedly unconstitutional condition that rises to the level of an Eighth Amendment violation. *Cf. Spencer*, 449 F.3d at 728-29 (involving continuous exposure to cold temperatures for several months).

Davis also alleges the Defendants "den[ied] [him] medical attention" after he "caught a severe cold" and/or "the flu" from being in the flooded cell. (ECF No. 8 at PageID 38 & 41.) This claim also arises under the Eighth Amendment. In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'' . . . proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105.

In the context of a claim for lack of medical care, the objective component of an Eighth Amendment violation requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that

6

even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). The subjective component again requires a showing of deliberate indifference. *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). Davis fails to sufficiently allege either the objective or subjective component of a claim for denial of adequate medical care.

First, he points to no governing precedent, and this Court is not aware of any, under which a cold or the flu constitute a sufficiently serious medical need for purposes of Eighth Amendment analysis. In fact, reported decisions hold to the contrary. *See*, *e.g., Jackson v. Walton*, No. 2:01-CV-0417, 2003 WL 22846399, at *2 (N.D. Tex. Nov. 20, 2003) (report and recommendation) ("Nothing about plaintiff's initial complaint of fever and a sore throat would indicate a medical emergency or even a serious medical need...."), *adopted*, 2004 WL 1778943 (N.D. Tex. Aug. 6, 2004); *Schwartz v. Jones*, No. 99-3269, 2000 WL 1859012, at *3 (E.D. La. Dec. 18, 2000) (finding that a "head cold" was not a serious medical need); *Scott v. Batson*, No. 88-1612, 1989 WL 37292, at *1 (9th Cir. Apr. 10, 1989) ("[N]either a 'head cold' nor a 'sore throat' ... is a 'serious medical need' ....").

Second, Davis's generalized averment that Defendants "refused to provide him with any help" for his cold and flu, (ECF No. 8 at PageID 38, 41), does not demonstrate that any of them acted with a sufficiently culpable state of mind. For example, Davis fails to identify which Defendants were subjectively aware of which particular symptoms he had.

7

The amended complaint further alleges that Defendants Tuggle and Gable made inappropriate comments to Davis while he was housed in cell #5. (ECF No. 8 at PageID 41 (Tuggle and Gable "laughed and tormented" Plaintiff).) Davis does not detail the specific language used. Nevertheless, harassment and verbal abuse, no matter how "shameful and utterly unprofessional," do not violate the Eighth Amendment. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545–46 (6th Cir. 2004) (affirming dismissal for failure to state a claim where plaintiff's allegations included continuous insulting remarks by guard); *see also Morrison v. Greenwald*, No. 3:09-CV-009, 2010 WL 1253962, at *9 (S.D. Ohio Feb. 24, 2010) report and recommendation adopted, No. 3-:09-CV-009, 2010 WL 1253958 (S.D. Ohio Mar. 23, 2010) ("The Constitution does not protect inmates (or anyone else) from gross insults by public officials, including prison guards. Furthermore, Plaintiff suffered no injury from the insult."). Even a guard's verbal threat of assault does not violate a prisoner's constitutional rights. *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004). Just as the Constitution does not mandate comfortable prisons," *Wilson*, 501 U.S. at 298, it does not mandate polite prison guards or officials. "Derogatory or abusive language and conduct do not give rise to a claim under § 1983." *Meadows v. Gibson*, 855 F. Supp. 223, 225 (W.D. Tenn. 1994) (citing *Paul v. Davis*, 424 U.S. 693 (1976)). Davis's allegations of verbal insults do not state a claim under § 1983.

Davis also alleges that Defendants Tuggle and Gable issued a false "lock-up order" to "justify" moving him to segregation.[4] (ECF No. 8 at PageID 39-40.) That contention does not state a constitutional claim. A prisoner does not have a Fourteenth Amendment due process right to be free of false disciplinary charges. *See Upshaw v. Jones*, No. 14-2534-JDT-TMP, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015) (citing *Person v. Campbell*, 182 F.3d 918, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) (unpublished)). While a prisoner has a due-process right to call witnesses on his behalf at a hearing, *Edwards v. Balisok*, 520 U.S. 641, 647 (1997), prisoners have no right to not to be charged with or convicted of prison disciplinary offenses, *see Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974). Davis's allegation of a "fabricated lock-up order" also does not state a claim for relief.

Though Davis refers to his "right to Equal Protection under Law," (ECF No. 8 at PageID 43), he does not expressly claim this right was violated or if so, how and by whom.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v.*

---

[4] Davis does not explain whether there is a difference between a "lock-up order" and a disciplinary charge. The Court therefore will assume the two are the same or similar.

*Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)), *overruled on other grounds by Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008).

Davis's passing reference to his "right to Equal Protection under Law" fails to meet these constitutional pleading requisites. He does not allege that any Defendants intentionally discriminated against him based on his membership in a suspect class. *See Washington v. Davis*, 426 U.S. 229, 239 (1976). Nor does he show that a discriminatory purpose was a factor in any challenged practice, or that he was treated differently from those who are similarly situated to him. *Village of Arlington Heights  v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265-66, 170 n.21 (1997).

Plaintiff states that "the sole reason he was placed in segregation was to retaliate against him for filing complaints about prison conditions." (ECF No. 8 at PageID 39.) Prior to the incident, Plaintiff had been summoned to the office of Defendants Bermudez and Owens and "threatened with reprisals for complaining about prison conditions." (*Id.*)

The Court reviews Plaintiff's retaliation claim under the First Amendment. *See Harbin- Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) ("Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution."). A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in ... civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Filing a grievance also is protected conduct. *Hill*, 630 F.3d at 472.

Davis refers to being "placed in segregation to retaliate against him for filing complaints about prison conditions." (ECF No. 8 at PageID 39-40.) He does not describe or attach any of the grievances or complaints he filed and does not identify any causal connection between his filing of those grievances or complaints and being placed in segregation. In addition, though it was Tuggle and Gable who allegedly falsified the retaliatory lock-up order, (*id.* at PageID 39-40), Davis has not alleged that either Defendant was aware of Davis's grievances. In sum, Davis has not shown that "the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F.3d at 1037. His retaliation claim therefore fails to state a claim for relief.

Davis claims a "conspiracy to violate civil rights 42 U.S.C. § 1983." (ECF No. 8 at PageID 44.) However, he does not identify any specific acts by particular Defendants upon which he bases his claim. (*Id.* at PageID 43 (referring only generally to "such actions and omissions on the part of all the defendants constitutes a conspiracy violation").)

11

A plaintiff may plead a conspiracy claim under § 1983, but he must do so with specificity. *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). "[V]ague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). This pleading standard for a claim of civil conspiracy is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). "To prevail on such a claim, a plaintiff must show that there is 'an agreement between two or more persons to injure another by unlawful action.'" *Sango v. Place*, No. 16-2095, 2016 WL 9413659, at *2 (6th Cir. Dec. 21, 2016) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)). The plaintiff must show "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury." *Id.* (quoting *Robertson*, 753 F.3d at 622).

Davis's vague, non-specific, and unsupported claim of "conspiracy to violate civil rights," (ECF No. 8 at PageID 44), fails to meet these constitutional pleading requisites.

Davis's original complaint did "not allege[] anything about CoreCivic, much less that one of its policies or customs was the moving force behind the alleged violation of [Davis's] rights." (ECF No. 7 at PageID 29.) Although the Court's December 6, 2019, order gave Davis leave to amend with respect only to his conditions of confinement claim, (*id.* at PageID 31-32), the Court will, in the interests of advancing this litigation, exercise its discretion and consider the amended complaint's allegations against CoreCivic.

The amended complaint states that CoreCivic is "responsible for the establishment of policies ... for the employment, training, supervision, and conduct" of HCCF's

12

employees and agents. (ECF No. 8 at PageID 35.) Davis says that CoreCivic "has a policy, practice, or custom to improperly investigate inmate complaints of officer misconduct [and] ... to tolerate the abuse of inmates by their officers[,] [which] constitutes a policy, practice, or custom of deliberate indifference." (*Id*. at PageID 42.) Davis also argues that CoreCivic has a policy of "failing to properly train supervisory personnel." (*Id*.) Thus, his theories of liability appear to be premised on CoreCivic's alleged: (1) policy of inadequate training or supervision; and (2) custom of tolerance or acquiescence of federal rights violations. *See Stewart v. City of Memphis,* No. 2:16-cv-02574-SHM, 2019 WL 332812, at *12 (W.D. Tenn. Jan. 25, 2019).

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). To establish municipal liability on this basis, a plaintiff must show "'(1) the training program was inadequate to the task the officer must perform, (2) the inadequacy is a result of the municipality's deliberate indifference, and (3) the inadequacy is closely related to or actually caused the plaintiff's injury.'" *Epperson v. City of Humboldt*, 140 F. Supp. 676 684 (W.D. Tenn. 2015) (quoting *Bonner–Turner v. City of Ecorse*, 627 F. App'x 400, 414 (6th Cir. 2015)). Deliberate indifference in this context requires a showing of "prior instances of unconstitutional conduct demonstrating that the municipality has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Id*. (quoting *Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir. 2008)); *see also Birgs v. City of Memphis*, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010). "The easiest way for an individual to meet this burden is to point to

13

past incidents of similar [] conduct that authorities ignored." *Birgs*, 686 F. Supp. 2d at 780; *see also Miller*, 408 F.3d at 816. "However, mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to make out deliberate indifference." *Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x 557, 563 (6th Cir. 2011).

Where a plaintiff asserts a claim of a custom of tolerance toward constitutional violations, *i.e.*, a custom of inaction, he must show "(1) a clear and persistent pattern of misconduct, (2) notice or constructive notice on the part of the municipality, (3) the defendant's tacit approval of the misconduct, and (4) a direct causal link to the violations." *Nouri v. County of Oakland*, 615 F. App'x 291, 296 (6th Cir. 2015) (internal quotation marks omitted); *see also Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) ("a custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims"). The Sixth Circuit has "never found notice of a pattern of misconduct (or the pattern itself) solely from the mistreatment of the plaintiff." *Nouri*, 615 F. App'x at 296. Relying solely upon his own experience is insufficient for a plaintiff to state a claim. *Id.*; *see also Epperson*, 140 F. Supp. 3d at 685. A claim based on a custom of tolerance likewise requires a showing of deliberate indifference. *Id.* (citing *Key v. Shelby County*, 551 F. App'x 262, 267 (6th Cir. 2014); *D'Ambrosio v. Marino*, 747 F.3d 378, 387–88 (6th Cir. 2014)).

The Sixth Circuit has routinely found that conclusory, speculative allegations are insufficient to state a plausible claim for relief under either theory. *See, e.g.*, *Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656 (6th Cir. 2018); *Bickerstaff v. Lucarelli*,

830 F.3d 388, 402 (6th Cir. 2016) (finding that "[b]eyond the blanket assertions that the City "condon[ed]" or "tolerat[ed]" police officer misconduct, [plaintiff] points to no facts that would indicate the existence of such an official policy or custom"); *Holland v. County of Macomb*, No. 16–2103, 2017 WL 3391653, at *3 (6th Cir. Mar. 17, 2017); *Nouri*, 615 F. App'x at 296 (the complaint "simply [did] not set forth any facts that suggest the Sheriff or County had notice of recurring violations, or even the mistreatment of [the plaintiff] himself"); *Epperson*, 140 F. Supp. 3d at 686 (the complaint did not offer "well-pleaded facts to support the legal conclusion that the City was on notice of a pattern or practice of unconstitutional uses of forces by officers ... or that it had a custom of ignoring violations or failing to discipline officers who engaged in such behavior"); *Birgs*, 686 F. Supp. 2d at 780 (the complaint's allegations amounted to "nothing more than the formulaic recitation of the elements of a cause of action").

Davis's amended complaint suffers from similar deficiencies. He offers only the legal conclusion that CoreCivic had some unspecified "policy, practice, or custom," (ECF No. 8 at PageID 42), of inadequate training, inadequate supervision, and tolerance or acquiescence of federal rights violations. He provides no facts showing a formal policy or any prior incidents suggesting CoreCivic's adoption of an informal practice or custom. Davis alleges not a single fact that suggests, plausibly or otherwise, that any Defendant's alleged misconduct in connection with the incident of which Davis complains was the result of a CoreCivic custom, policy, or practice. Davis neither sets forth any details as to the supposed CoreCivic custom or practice nor identifies specific instances of similar past conduct. There are no facts before the Court from which to plausibly infer that CoreCivic

deliberately ignored a history of abuse by its employees or agents. Davis does not allude to any past similar incidents, beyond mere conclusory statements. His mere invocation of the "policy or well-settled custom" language from the Court's December 6, 2019, order, (*see* ECF No. 7 at PageID 29), does not meet his pleading burden and fails to state a claim against CoreCivic.

Davis asserts claims under Tennessee law for violation of Article I, §§ 13 and 32 of the Tennessee Constitution[5]; negligence and negligence per se; assault and battery; and intentional infliction of emotional distress. (ECF No. 8 at 43-44.)

Under 28 U.S.C. § 1367(a), "[i]f there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Veneklase v. Bridgewater Condos, L.C.*, 670 F.3d 705, 716 (6th Cir. 2012) (quoting *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 892 (6th Cir. 1998)) (internal quotation marks omitted). Section 1367 grants district courts broad discretion to decide whether to exercise supplemental jurisdiction over related state law claims. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010). Courts "should consider and weigh several factors, including the "values of judicial economy, convenience, fairness, and comity." *Id.* at 951-52 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)) (internal quotation marks omitted). In this case, because all of Davis's

---

[5] "[L]aws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal, are contrary to the principles of a free Government; wherefore no ex post facto law shall be made." Tenn. Const. art. 1 § 13. "[T]he erection of safe prisons, the inspection of prisons, and the humane treatment of prisoners, shall be provided for." Tenn. Const. art. 1 § 32.

federal claims are being dismissed, the Court declines to exercise supplemental jurisdiction over any claims arising under state law.

In conclusion, for all of the foregoing reasons, the Court DISMISSES this case in its entirety as follows: the federal claims asserted in Davis's amended complaint fail to state a claim on which relief may be granted and are DISMISSED with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); jurisdiction over the claims arising under Tennessee law is declined, and those claims are DISMISSED without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Leave to further amend is DENIED.

Pursuant to Federal Rule of Appellate Procedure 24(a) and 28 U.S.C. § 1915(a)(3), it is CERTIFIED that any appeal in this matter by Davis would not be taken in good faith.

If Davis nevertheless chooses to file a notice of appeal, he must either pay the entire $505 appellate filing fee or submit a new *in forma pauperis* affidavit and a current, certified copy of his inmate trust account statement for the last six months, in compliance with 28 U.S.C. §§ 1915(a)-(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Davis, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This strike shall take effect when judgment is entered. *See Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

                                      s/ **James D. Todd**
                                      JAMES D. TODD
                                      UNITED STATES DISTRICT JUDGE